**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| THE JAMES MADISON PROJECT, et al., | * * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 17-144 (APM) |
| DEPARTMENT OF JUSTICE, et al., | * * * * | |
| Defendants. | * * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

### RESPONSE TO DEFENDANTS' SUPPLEMENTAL SUBMISSION AND FURTHER RESPONSE TO PLAINTIFFS' POST-BRIEFING NOTICES

The Plaintiffs, The James Madison Project and Josh Gerstein ("Plaintiffs"), hereby submit their response to the Defendants' Supplemental Submission and Further Response to Plaintiffs' Post-Briefing Notices ("Defendants' Submission"). See Dkt. #29 (filed November 13, 2017)("Defs' Submission").

Throughout their filing, the defendants Office of the Director of National Intelligence, Central Intelligence Agency, Department of Defense and Department of Justice (hereinafter referred to collectively as "Defendants") seek to minimize and effectively trivialize the significance of what they concede are official statements by the President of the United States that are material and relevant to this FOIA action. Id. at 4-7. For the reasons set forth in detail below, the Plaintiffs submit that this Court has more than sufficient information in the record to conclude, at a minimum, that there is a genuine issue of material fact in dispute that precludes granting summary judgment in favor of the Defendants at this time.

## ARGUMENT

The Defendants concede that the various public disclosures highlighted by the Plaintiffs – including several public statements made by President Donald Trump ("President Trump") subsequent to the conclusion of briefing in this case that the Plaintiffs brought to this Court's attention in supplemental notices, see Dkt. #23 (filed October 19, 2017); Dkt. #24 (filed October 22, 2017) – constitute official statements by the President of the United States. See Defs' Submission at 2.

The Defendants nonetheless argue that the official disclosures are insufficiently specific to constitute a Glomar waiver in this case, and that President Trump did not state he was relying upon information provided by the Defendants in making his official disclosures. Id. at 5-7. Neither of these arguments hold up to scrutiny.

### A. The Applicable Standard

The parties previously outlined in detail their respective views regarding the standard by which the "official acknowledgement" exception to a Glomar response is evaluated. See Dkt. #18-1 at 3-4 (filed August 7, 2017); Dkt. #20 at 6-7 (filed September 7, 2017); Dkt. #22 at 5 (filed September 25, 2017). The Plaintiffs have no desire to re-litigate what has already been extensively briefed, but nonetheless feel it necessary to respond to the Defendants' arguments, see Defs' Submission at 4-6, regarding the specificity requirement underlying the "official acknowledgment" exception.

The Defendants have taken an overly-cramped interpretation of the evidentiary burden in a Glomar case that is incompatible with past precedent. See Defs' Submission at 4 (arguing that "the information requested must be as specific as the information previously released"). When evaluating the appropriateness of a Glomar response the

specificity requirement is applied in a manner slightly different than that which is ordinarily done with respect to the substantive contents of actual records. See Wolf v. CIA, 473 F.3d 370, 379 (D.C. Cir. 2007)("In the Glomar context, then, if the prior official disclosure establishes the *existence* (or not) of records responsive to the FOIA request, the prior disclosure necessarily matches both the information at issue – the existence of records – and the specific request for that information.")(emphasis in original).

One of this Court's brethren, U.S. District Court Judge Tanya Chutkan ("Judge Chutkan"), recently provided a particularly instructive overview of the evidentiary distinction applicable to "official disclosures" with respect to a Glomar response compared to the contents of particular records.

> The law concerning how to overcome an agency Glomar response arose out of the official acknowledgment exception to FOIA's exemptions, which required the requester to meet three stringent criteria: (1) "the information requested must be as specific as the information previously released," (2) "the information requested must match the information previously disclosed," and (3) "the information requested must already have been made public through an official and documented disclosure." []  However, the inquiry is not identical. The Wolf court, which addressed the official acknowledgment standard in the Glomar context for the first time, explained that where the official acknowledgment or prior disclosure demonstrates the existence of the records the requester seeks, "the prior disclosure necessarily matches both the information at issue—the existence of records—and the specific request for that information." Id. at 379. *Fitzgibbon's matching and specificity criteria, then, are not applicable in the Glomar context;* in such cases, the court must analyze only whether the prior disclosure acknowledges the existence of the records sought.

Smith v. CIA, 246 F. Supp. 3d 28, 32 (emphasis added)(some internal citations omitted).

3

The analysis by Judge Chutkan was arguably the logical continuation of the D.C. Circuit's ruling in ACLU v. CIA, 710 F.3d 422 (D.C. Cir. 2013)("ACLU I"). None of the official disclosures at issue in ACLU I – whether they were from then-President Barack Obama, then-Assistant to the President for Homeland Security and Counterterrorism John Brennan, or then-Director of the CIA Leon Panetta – ever *specifically* acknowledged that CIA was involved in drone strikes, let alone that CIA would have any documents *about* the drone strikes. Id. at 428-432; see also id. at 430 ("It is true, of course, that neither the President nor any other official has specifically stated that the CIA has *documents* relating to drone strikes …")(emphasis in original). At most, they reflected official acknowledgment that drone strikes were being conducted by the U.S. Government, and that CIA was *aware* of and had an *interest* in the details of what had occurred in *some* of the drone strikes. Id. The D.C. Circuit nonetheless rejected CIA's Glomar response, concluding that revealing the extent to which CIA had (or did not have) records *about* the drone strikes would not acknowledge anything that had not already been placed into the public domain by way of the aforementioned official disclosures. Id. at 430.[1]

The Defendants' misapplication of the case law concerning the "official acknowledgment" exception to a Glomar response cannot survive scrutiny and should be dismissed in favor of a proper application of the standard outlined in ACLU I and

---

[1] The Defendants' suggestion that the D.C. Circuit subsequently reiterated the specificity requirement in a subsequent ruling, see Defs' Submission at 6, is erroneous and arguably disingenuous. The D.C. Circuit's analysis in ACLU v. Dep't of Justice, 640 F. App'x 9, 11 (D.C. Cir. 2016)("ACLU II"), was applying the three-part specificity criteria in the context of *substantive* withholdings of particular documents. Id. It was not being applied in the context of a Glomar response, as the legal permissibility of a Glomar response had already been rejected in ACLU I.

clarified in Smith. As the Plaintiffs have outlined in their prior pleadings, see Dkt. #18-1 at 5-7; Dkt. #22 at 5-6, application of that standard reasonably can be construed as warranting the conclusion that, at a minimum, President Trump's prior official disclosures have created a genuine issue of material fact in dispute regarding the existence of records memorializing an investigation into the accuracy of the Steele Dossier allegations summarized in the two-page synopsis.

### B. The Context Of President Trump's Official Disclosures

The crux of the Defendants' Submission understandably addresses the question this Court directed them to answer, namely whether President Trump's tweets reflect official U.S. Government statements. See Defs' Submission at 4 ("In answer to the Court's question, the government is treating the President's statements to which the plaintiffs point – whether by tweet, speech or interview – as official statements of the President of the United States.").[2]

The Defendants, however, subsequently seek to add a layer of nuance to the legal term of art known as an "official disclosure". The Defendants assert that this Court "cannot assume that the President was expressing a view based on 'some knowledge and understanding' *provided by these agencies*, see id. at 5 (emphasis in original), and state that "plaintiffs are not entitled to clarification of what the President has chosen to say." See id. at 7. This argument cannot hold water.

---

[2] Interestingly enough, the Government took this position only a few weeks after separately arguing in a First Amendment action that the President's use of his Twitter account – particularly his discretionary decision to block certain users – did not qualify as "state action". See *https://knightcolumbia.org/sites/default/files/content/Knight_v_Trump_WH_opening_brief.pdf* (last accessed November 15, 2017)(Government memorandum of law in support of motion for summary judgment).

The Defendants do not cite to any case law – nor are the undersigned aware of any relevant case law – that supports application of this layer of nuance to the "official acknowledgment" exception. There is no indication that either the D.C. Circuit nor this Court's brethren within the Circuit have ever contemplated that official statements by U.S. Government officials (including the President) were presumed to be based on anything other than official U.S. Government information. See e.g., ACLU I, 710 F.3d at 429-431; Wolf, 473 F.3d at 379-380; Smith, 246 F. Supp. 3d at 32-33.

Even assuming *arguendo* it is feasible to postulate that an official disclosure can be based upon something other than official U.S. Government information (such as idle personal speculation, for example), the Defendants' assertion that there can be no inquiry into the matter is absurd. The Defendants are attempting to create a "no-man's land" in the arena of official disclosures, in which an official statement by the President is not actually an official statement for purposes of the "official acknowledgment" exception if the President does not specifically state he was relying upon official U.S. Government information. If we take at face value the Defendants' argument that the President may have made his official statements based upon non-U.S. Government information – something which the Plaintiffs have admittedly noted is certainly plausible, see Dkt. #26 at 2 (filed November 1, 2017) – that is *exactly* the type of genuine issue of material fact in dispute that this Court is required to resolve *prior* to awarding summary judgment to either party. Cf. Sussman v. United States Marshals Serv., 494 F.3d 1106, 1117 (D.C. Cir. 2007)(noting that the presumption of regularity supports rebuttable presumption that public officers have properly discharged their official duties).

With all due respect, to adhere to the Defendants' position would eviscerate the "official acknowledgment" exception. This Court should decline to take that path. Even if this Court finds merit in the Defendants' claim that not all official disclosures are actually official disclosures, summary judgment certainly is not warranted for the Defendants until such time as the written record is clarified to determine upon what information President Trump – and, to the extent this Court deems it relevant, White House Press Secretary Sarah Huckabee Sanders – was relying when he made his official statements describing the Steele Dossier as "discredited", "phony", "fake", "false", or any other term that he employed.

Indeed, for whatever it is worth, and if only to add one final supplemental piece of information to the written record, the Plaintiffs refer this Court to the following official statements made by President Trump during his just-completed trip to various countries in Asia:

> "People that don't know me, they say I like to watch television – people with fake sources. You know, fake reporters, fake sources. *But I don't get to watch much television. Primarily because of documents. I'm reading documents. A lot.*

*https://www.theguardian.com/us-news/2017/nov/11/trump-has-no-comment-on-roy-moore-because-he-doesnt-watch-much-tv* (last accessed November 14, 2017)(remarks made on November 11, 2017)(emphasis added).

It borders on axiomatic that if we take the President at his word his official disclosures are based upon information he gleaned from official U.S. Government documents. If nothing more, the factual discrepancy requires an inquiry by this Court.

Date: November 16, 2017

                                            Respectfully submitted,

                                                    /s/
                                          _____
                                          Bradley P. Moss, Esq.
                                          D.C. Bar #975905
                                          Mark S. Zaid, Esq.
                                          D.C. Bar #440532
                                          Mark S. Zaid, P.C.
                                          1250 Connecticut Avenue, N.W.
                                          Suite 200
                                          Washington, D.C.  20036
                                          Brad@MarkZaid.com
                                          Mark@MarkZaid.com

                                          Attorneys for the Plaintiffs