## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

—————————————————————————— )
JAMES MADISON PROJECT, et al.,     )
                                    )
     Plaintiffs,                 )
                                      )
         v.                  )     **Case No. 17-cv-00144 (APM)**
                                      )
DEPARTMENT OF JUSTICE, et al.,     )
                                      )
     Defendants.               )
—————————————————————————— )

## INDICATIVE RULING AND ORDER AS TO PLAINTIFFS'
## MOTION FOR RECONSIDERATION

Once more, this court is called upon to opine on the legal consequences of President Donald J. Trump's declassification of information concerning the "Dossier"—the 35-page compilation of memoranda prepared by former British intelligence officer Christopher Steele concerning Russian efforts to influence the 2016 presidential election and alleged ties between Russia and then candidate Trump.  *Cf. BuzzFeed, Inc. v. U.S. Dep't of Justice*, Case No. 17-mc-02429-APM, 2018 WL 3719231 (D.D.C. Aug. 3, 2018).  In this case, the court must decide whether the February 2018 public release of two congressionally drafted memoranda—popularly known as the "Nunes Memo" and the "Schiff Memo"—vitiates Defendants' *Glomar* responses to Plaintiffs' demand for records concerning a "two-page synopsis" of the Dossier.

The court initially granted summary judgment in favor of Defendants.  *See generally James Madison Project v. Dep't of Justice ("James Madison I")*, 302 F. Supp. 3d 12 (D.D.C. 2018), *appeal docketed*, No. 18-5014 (D.C. Cir. Jan. 25, 2018).  It held that neither the President's tweets and other public statements, nor the public statements of other high-ranking government officials, constituted a public acknowledgment that the documents sought by Plaintiffs James Madison

Project and Josh Gerstein in fact exist and are possessed by Defendant agencies. *See id.* Plaintiffs then filed a notice of appeal, but shortly after moved for reconsideration in light of the Nunes Memo's release. Plaintiffs' notice of appeal, however, divested the court of jurisdiction over this matter. *See United States v. DeFries*, 129 F.3d 1293, 1302 (D.C. Cir. 1997) (per curiam) ("The filing of a notice of appeal . . . 'confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal.'" (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)). Accordingly, Plaintiffs now ask the court to indicate, under Federal Rule of Civil Procedure 62.1, that it would grant their Motion upon remand. *See* Fed. R. Civ. P. 62.1(a)(3). Defendants assert that reconsideration is not warranted and urge the court to deny the Motion.

For the reasons that follow, the court finds that the disclosures contained in the Nunes and Schiff Memos do constitute a public acknowledgement of the existence of the records sought by Plaintiffs from Defendant Federal Bureau of Investigation ("FBI") and that the FBI therefore may no longer maintain its *Glomar* responses. Accordingly, the court indicates that, upon remand, the court would grant Plaintiffs' pending Motion for Reconsideration as to the FBI. Plaintiffs' Motion as to the remaining agency Defendants, however, is denied.

## I.

The court already has written extensively about this matter, and so only will summarize the relevant facts and procedural history here.

### A.

In January 2017, Plaintiffs submitted a Freedom of Information Act ("FOIA") request to four federal agencies—the Office of the Director of National Intelligence, the Central Intelligence

Agency, the National Security Agency (collectively, "Intelligence Community Defendants"), and the FBI—for the following information:

> (1)  The two-page "synopsis" provided by the U.S. Government to President-Elect Trump with respect to allegations that Russian Government operatives had compromising personal and financial information about President-Elect Trump ("Item One");
>
> (2)  Final determinations regarding the accuracy (or lack thereof) of any of the individual factual claims listed in the two page synopsis ("Item Two"); and
>
> (3)  Investigative files relied upon in reaching the final determinations referenced in [Item Two] ("Item Three").

*James Madison I*, 302 F. Supp. 3d at 17.  These responses remained unanswered at the time Plaintiffs filed this action.  *See id.* 17–18.

Thereafter, within the context of this litigation, Defendants responded to Plaintiffs' FOIA demands.  All Defendants asserted *Glomar* responses as to Items Two and Three—that is, they refused to admit or deny whether any responsive records even exist.  *See id.* at 18.  As to Item One, only the FBI advanced a *Glomar* response, while the Intelligence Community Defendants admitted the existence and their possession of the "two-page 'synopsis'" but invoked FOIA Exemptions 1 and 3 to justify withholding the document in its entirety.  *See id.*  Defendants then moved for summary judgment, which the court granted in full on January 4, 2018.  *See id.* at 17.  The court held that: (1) Defendants' *Glomar* responses to Items Two and Three were proper, *see id.* at 31–35; (2) the FBI's *Glomar* response to Item One was appropriate, *see id.* at 29–31; and (3) the Intelligence Community Defendants' withholding of the two-page synopsis was justified, *see id.* at 35–36.  Plaintiffs then noticed an appeal from the court's ruling.  *See* Notice of Appeal, ECF No. 38.

B.

But then the ground shifted.  On February 2, 2018, President Trump authorized release of a memorandum prepared by the majority staff of the House Permanent Select Committee on Intelligence, commonly referred to as the Nunes Memo.  *See* Pls.' Mot. for Recons., ECF No. 40 [hereinafter Pls.' Mot.], Ex. 1, ECF No. 40-1 [hereinafter Nunes Memo].  Among other things, the Nunes Memo revealed that former British intelligence operative Christopher Steele drafted the Dossier; that, in October 2016, the FBI relied in part on portions of the Dossier's contents to secure a Foreign Intelligence Surveillance Act ("FISA") warrant as to Carter Page, a former campaign advisor to then-candidate Trump; that, in parallel with pursuing the Page FISA warrant, the FBI was undertaking efforts to corroborate the allegations contained within the Dossier; and, critically for this case, that "in early January 2017, Director Comey briefed President-elect Trump on a summary of the Steele dossier."  *See id.* at 4–6.[1]

A few weeks later, the President authorized the declassification and release of even more information about the Dossier's origin and use.  On February 24, 2018, a rebuttal to the Nunes Memo, written by the minority staff of the House Permanent Select Committee on Intelligence, became public.  *See* Pls.' Notice of Suppl. Info., ECF No. 41, Ex. 1, ECF No. 41-1 [hereinafter Schiff Memo].  The rebuttal, better known as the "Schiff Memo," revealed, among other things, that Steele shared his "reporting . . . with an FBI agent . . . through the end of October 2016"; and, importantly for this case, that "[t]he FBI has undertaken a rigorous process to vet allegations from Steele's reporting."  *Id.* at 5, 8.  As a result of the release of the Nunes and Schiff Memos, there is now in the public domain meaningful information about how the FBI acquired the Dossier and how the agency used it to investigate Russian meddling in the 2016 presidential election.

---

[1] Citations to both the Nunes and Schiff Memos are to the page numbers electronically generated by CM/ECF.

Not surprisingly, after the release of the Nunes Memo, Plaintiffs asked this court to reconsider the validity of Defendants' *Glomar* responses. *See generally* Pls.' Mot. Moving under Rule 60(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs argued that the information contained in the Memos "undoubtedly would have conclusively and substantively changed the outcome of the present case if it had been available prior to this Court's" summary judgment ruling. *Id.* at 6. Defendants opposed Plaintiffs' motion, arguing that "nothing to which [Plaintiffs] refer in the Nunes Memo or in the Schiff Memo addresses the two-page synopsis that is the subject of plaintiffs' request." Defs.' Opp'n to Pls.' Mot., ECF No. 43 [hereinafter Defs.' Opp'n], at 2. As Defendants put it: "The Schiff Memo, like the Nunes Memo, is devoid, in fact, of any reference to the two-page synopsis" and thus "[n]o waiver of the *Glomar* responses . . . results[.]" *Id.* at 3.

In view of the parties' positions, the issue before the court is: Does the President's approved release of the information contained in the Nunes and Schiff Memos constitute an official acknowledgement of the existence of records requested by Plaintiffs, such that Defendants' *Glomar* responses are now invalid? The court turns now to answer that question.

## II.

### A.

Rule 60(b)(2) allows for relief from a final judgment, order, or proceeding based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial." Fed. R. Civ. P. 60(b)(2). In order for evidence to meet the requirements of Rule 60(b)(2), the following criteria must be met:

> (1) the newly discovered evidence is of facts that existed at the time of trial or other dispositive proceeding; (2) the party seeking relief was justifiably ignorant of the evidence despite due diligence; (3) the evidence is admissible and is of such importance that it

probably would have changed the outcome; and (4) the evidence is
not merely cumulative or impeaching.

*West v. Holder*, 309 F.R.D. 54, 57 (D.D.C. 2015) (citation omitted).

There is no dispute here that both the Nunes and Schiff Memos satisfy the first, second,
and fourth prongs for purposes of Rule 60(b)(2).  *See Bain v. MJJ Prods., Inc.*, 751 F.3d 642, 647
(D.C. Cir. 2014) (defining "newly discovered evidence").  Thus, the sole question for the court is
whether those Memos are "of such importance that it probably would have changed the outcome"
of the court's summary judgment ruling.  *West*, 309 F.R.D. at 57; *see also In re Korean Air Lines
Disaster of Sept. 1, 1983*, 156 F.R.D. 18, 22 (D.D.C. 1994) (noting that evidence is "newly
discovered" under Rule 60(b)(2) if it is "of such a material and controlling nature as will probably
change the outcome" (citing *Goland v. CIA*, 607 F.2d 339, 371 n.12 (D.C. Cir. 1978)).

## B.

It is helpful to start with a recap of the principles that govern how to evaluate a *Glomar*
response.  To overcome a *Glomar* response, the plaintiff can either challenge the agency's position
that disclosing the existence of a record will cause harm under the FOIA exemption asserted by
the agency, or the plaintiff can show that the agency has "officially acknowledged" the existence
of records that are the subject of the request.  *See James Madison I*, 302 F. Supp. 3d at 20.  If the
requester takes the second route—as Plaintiffs do here—she "must pinpoint an agency record that
both matches the plaintiff's request and has been publicly and officially acknowledged by the
agency."  *Id.* at 21 (emphasis omitted) (quoting *Moore v. CIA*, 666 F.3d 1330, 1333 (D.C. Cir.
2011)).[2]

---

[2] Although drafted by Legislative Branch staff, Defendants here do not dispute that the Nunes and Schiff Memos
constitute official public statements of the President that could give rise to a *Glomar* waiver.  *Cf. James Madison I*,
302 F. Supp. 3d at 24 (The D.C. Circuit has recognized that '[a] disclosure made by the President, or by [an] advisor
acting as "instructed" by the President,' is attributable to executive branch agencies for purposes of the official
acknowledgement doctrine." (quoting *Am. Civ. Liberties Union (ACLU) v. CIA*, 710 F.3d 422, 429 n.7 (D.C. Cir.

Generally speaking, there are two ways in which a plaintiff can establish that a public statement officially acknowledges the existence of a document. The plaintiff can either (1) identify a statement that "on [its] face" constitutes an official acknowledgement of a document's existence, or (2) point to a statement that, when combined with the "context in which it is made," leads to an "inescapable inference that the requested record[ ] in fact exist[s]." *See James Madison I*, 302 F. Supp. 3d at 22. Under either approach, the "official acknowledgement" doctrine must be construed "strictly." *Id.* at 23 (quoting *Moore*, 666 F.3d at 1333). And, "whether expressly or by inference, the official statement must render it 'neither logical nor plausible' for the agency to justify its position that disclosure would reveal anything not already in the public domain." *Id.* at 24 (quoting *Am. Civ. Liberties Union (ACLU) v. CIA*, 710 F.3d 422, 430 (D.C. Cir. 2013)).

## III.

Plaintiffs argue that the Nunes and Schiff Memos, both directly and by way of inference, "pinpoint" the existence of agency records that "match" their FOIA requests. They contend that both Memos disclose the FBI's efforts to verify or refute the accuracy of the Dossier's allegations, and note that the Nunes Memo expressly mentions "a *source validation report* conducted by an independent unit within [the] FBI [that] assessed Steele's reporting as only minimally corroborated." Nunes Memo at 6 (emphasis added); *see* Pls.' Mot. at 2–3. The referenced "source validation report," they assert, "matches" their requests for "final determinations regarding the accuracy (or lack thereof) of the allegations summarized in the two-page synopsis, as well as

---

2013)). In fact, the Nunes Memo's release caused the Department of Justice to withdraw its *Glomar* response in a different FOIA case before this court, involving a demand for records relating to the Carter Page FISA warrant application. *See James Madison Project v. U.S. Dep't of Justice*, Case No. 17-cv-00597-APM (D.D.C.), Def.'s Resp. to Order, ECF No. 32, at 1 ("Defendant withdraws the Glomar response as to the existence of the Page FISA applications and orders identified in the Nunes Memo.").

investigative files (if any) relied upon in rendering those final determinations." Pls.' Mot. at 2–3 (internal quotation marks omitted); *see also James Madison I*, 302 F. Supp. 3d at 17.

Defendants' response is straightforward. Distinguishing the Dossier from the two-page synopsis, they concede that both Memos disclose the FBI's efforts to corroborate the Dossier's allegations, but assert that nothing in the Memos "addresses the two-page synopsis that is the subject of plaintiffs' requests." Defs.' Opp'n at 2. In other words, they argue, neither the Nunes Memo nor the Schiff Memo contains reference to any document that matches the "final determinations" or "investigative files" about the synopsis that Plaintiffs seek, so their *Glomar* responses remain on firm ground.

Plaintiffs have the better of the argument.

## A.

*Item One: The Two-Page Synopsis.* Recall, only the FBI asserted a *Glomar* response to Plaintiffs' demand for a copy of the two-page synopsis presented to President-elect Trump. *James Madison I*, 302 F. Supp. 3d at 18. The Nunes Memo makes the FBI's position no longer tenable because it expressly refers to the document Plaintiffs seek. Specifically, the Nunes Memo states: "[I]n early January 2017, [FBI] Director Comey briefed President-elect Trump on *a summary of the Steele dossier*, even though it was—according to his June 2017 testimony—'salacious and unverified.'" Nunes Memo at 6 (emphasis added). Read in context, the Nunes Memo's reference to "a summary of the Steele dossier" presented to President-elect Trump in "early January 2017" matches Plaintiffs' first demand: a "two-page 'synopsis' provided by the U.S. Government to President-Elect Trump with respect to allegations that Russian Government operatives had compromising personal and financial information about President-Elect Trump."

To begin with, the phrase "a summary of the Steele dossier" clearly refers to a written summary. Interpreting that phrase to refer to an *oral* summary would be grammatically unnatural. The Nunes Memo uses the past tense of the verb "brief," the preposition "on," and the article "a" before "summary" to describe what Director Comey *did* with respect to "a summary of the Steele Dossier."  Reading those terms together conveys that Director Comey dispensed information as to some tangible object—a briefing "on" "a summary."  To say that the Director "briefed" the President-elect "on" "an" *oral* summary would make little sense.  If the briefing concerned only an oral summation, then the phrase "a summary of" to modify "the Steele Dossier" would be entirely unnecessary ("Director Comey briefed President Trump on . . . the Steele Dossier").  Thus, understanding "summary" to refer to a "written summary" is the natural reading.

Context supplies other evidence of a match between Plaintiffs' Item One request and the Nunes Memo's reference to "a summary of the Dossier."  The terms "synopsis"—used by Plaintiffs—and "summary"—used by the Nunes Memo—are, of course, synonyms.  The interchangeability of those words points to the same document.  Additionally, Plaintiffs' demand for a document pertaining to "allegations that Russian Government operatives had compromising and personal financial information about President-Elect Trump" is an unmistakable reference to what the Nunes and Schiff Memos identify as the Dossier.  *See* Nunes Memo at 5 (stating that the "'dossier' [was] compiled by Christopher Steele" who was tasked with "obtain[ing] derogatory information on Donald Trump's ties to Russia"); *cf.* Schiff Memo at 3–4 ("DOJ's applications did <u>not</u> otherwise rely on Steele's reporting, including any 'salacious' allegations about Trump, and the FBI never paid Steele for this reporting.").  And the Nunes Memo's description of what Director Comey did with the "summary" is consistent with a January 10, 2017, CNN article that Plaintiffs incorporated in their FOIA request to the agencies "for context."  *See* Answer, ECF No.

8, Ex. A, ECF No. 8-1 [hereinafter FOIA Request], at 2; Defs.' Mot. for Summ. J., ECF No. 14, Ex. G, ECF No. 14-14 [hereinafter CNN Article].  The CNN article reported that allegations regarding Russian possession of "compromising personal and financial information" about the President-elect were "presented" in a two-page synopsis to President-elect Trump during the first week of January 2017 by "four of the senior-most US intelligence chiefs," including FBI Director Comey.  CNN Article at 1–2; *see also* FOIA Request at 3 (stating the "two page synopsis included allegations derived from a 35 page 'dossier' allegedly compiled by a former British intelligence operative" and published by BuzzFeed).  The Nunes Memo confirms this description of events. It places Director Comey in a briefing of President-elect Trump regarding a summary of the Dossier in January 2017.  These parallels lead the court to conclude that the "synopsis" sought by Plaintiffs is in fact the "summary" acknowledged by the Nunes Memo.

It is true that the Nunes Memo does not use the word "synopsis."  But that is not fatal.  The context in which the official acknowledgement was made leads to the obvious inference that the FBI possesses the two-page synopsis Plaintiffs seek.  Is it reasonable to conclude that the synopsis does not exist or that the FBI does not possess it, even though the FBI has, in the words of the Nunes Memo, undertaken a "rigorous process to vet allegations from Steele's reporting"?  Of course not.  No reasonable person would accept as plausible that the nation's top law enforcement agency does not have the two-page synopsis in light of these officially acknowledged facts of its actions.  As the D.C. Circuit observed in *ACLU*, "[t]he *Glomar* doctrine is in large measure a judicial construct, an interpretation of FOIA exemptions that flows from their purpose rather than their express language."  710 F.3d at 431.  To accept the FBI's *Glomar* response as to Item One in this case would "stretch that doctrine too far."  *Id.*

By authorizing the release of the Nunes Memo to make known the existence of the "summary" of the Dossier on which he was briefed, the President has publicly acknowledged the existence of the two-page synopsis in Director Comey's possession. The FBI therefore can no longer assert a *Glomar* response to Plaintiffs' demand for that record.

B.

*Items Two and Three: Final Determinations and Investigative Files*.  For much the same reasons already discussed, it remains no longer logical nor plausible for the FBI to maintain that it cannot confirm nor deny the existence of documents responsive to Plaintiffs' second and third requests: (1) "[f]inal determinations regarding the accuracy (or lack thereof) of any of the individual factual claims listed in the two page synopsis" and (2) the "[i]nvestigative files relied upon in reaching [such] final determinations."

The Memos reveal that the FBI has undertaken substantial efforts to confirm the accuracy of the Dossier's reporting.  The Nunes Memo expressly acknowledges the existence of "a source validation report," conducted by an "independent unit within [the] FBI," which "assessed Steele's reporting as only minimally corroborated."  Nunes Memo at 6.  The Schiff Memo takes a more favorable view of a portion of Steele's reporting, and provides even more information about the FBI's efforts.  It explains that "Steele's information about [Carter] Page was consistent with the FBI's assessment of Russian intelligence efforts to recruit him and his connections to Russian persons of interest," Schiff Memo at 6, and that the FBI had reached a sufficient level of confidence in Steele's reporting about Carter Page's alleged coordination with Russian officials to include that information in a FISA warrant application, *id.* at 8.  Additionally, the Schiff Memo states: "The FBI has undertaken a rigorous process to vet allegations from Steele's reporting, including with regard to Page."  *Id.* at 8.  Unless the court is to believe that the FBI undertook these efforts

11

without creating any memoranda or other papers containing assessments about Steele's reporting and did not gather files for that purpose—a wholly implausible proposition—the Nunes and Schiff Memos are "tantamount to an acknowledgment that the [FBI] has documents on [those] subject[s]." *ACLU*, 710 F.3d at 431.

Defendants counter that the absence of any express reference in the Memos to efforts to validate the synopsis, as opposed to the Dossier, allows them to stand on *Glomar* responses as to Items Two and Three.  But that position defies logic.  As a "summary" of the Dossier, Nunes Memo at 6, the synopsis undeniably contains some subset of the Dossier's allegations.  It is simply not plausible to believe that, to whatever extent the FBI has made efforts to verify Steele's reporting, some portion of that work has not been devoted to allegations that made their way into the synopsis.  After all, if the reporting was important enough to brief the President-elect, then surely the FBI thought enough of those key charges to attempt to verify their accuracy.  It will be up to the FBI to determine which of the records in its possession relating to the reliability of the Dossier concerns Steele's reporting as discussed in the synopsis.  Accordingly, the FBI has waived its *Glomar* responses as to Items Two and Three of Plaintiffs' FOIA request.

The same cannot be said, however, about the Intelligence Community Defendants.  Neither the Nunes Memo nor the Schiff Memo makes any reference to any effort by the Intelligence Community Defendants to determine the accuracy (or lack thereof) of any of the individual factual claims contained in the synopsis.  Although an official presidential statement can vitiate a *Glomar* response for an executive branch agency, *see ACLU*, 710 F.3d at 429 n.7, the court does not read Circuit precedent to go so far as to say that the President's acknowledgment of the existence of records by one agency categorically precludes *every* part of the Executive Branch from asserting a *Glomar* response.  Rather, if an official presidential acknowledgement is limited to a single

component of the Executive Branch, as is the case here, other unrelated components may still invoke *Glomar*. The court's conclusion is consistent with the principle that, when the President makes an official acknowledgment as to a particular agency, in that capacity he acts solely as the "parent" of that agency and that agency alone—not the entire Executive Branch. *Cf. id.* (explaining that the rule that one agency's waiver of a *Glomar* response does not bind another, unrelated agency "does not apply . . . where the disclosures are made by an authorized representative of the agency's parent. A disclosure made by the President, or by his counterterrorism advisor acting as 'instructed' by the President, falls on the 'parent agency' side of that line." (internal citations omitted)). To adopt the contrary rule would have far-reaching consequences that this court is not prepared to accept, in the absence of clear guidance from the Circuit. Accordingly, the court finds that disclosures contained in the Nunes and Schiff Memos are *not* official acknowledgements that preclude the Intelligence Community Defendants from maintaining *Glomar* responses as to Items Two and Three of Plaintiffs' request.

## IV.

For the foregoing reasons, consistent with Rule 62.1, the court states that, on remand, the court would grant Plaintiffs' Motion for Reconsideration as to all of the FBI's *Glomar* responses. The court, however, denies the Motion for Reconsideration as to the Intelligence Community Defendants' *Glomar* responses to Plaintiffs' second and third FOIA requests. *See* Fed. R. Civ. P. 62.1(a)(2).

Dated:  August 16, 2018

Amit P. Mehta
United States District Judge